# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

---

GREGORY WARREN KELLY,

*Plaintiff - Appellant,*

v.

THE TOWN OF ABINGDON,

*Defendant - Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT ABINGDON

---

## OPENING BRIEF OF APPELLANT

---

Thomas E. Strelka
Monica L. Mroz
STRELKA EMPLOYMENT LAW
119 Norfolk Avenue, SW, Suite 330
Roanoke, VA 24011
540-283-0802
thomas@strelkalaw.com
monica@strelkalaw.com

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>21-2261</u>          Caption: <u>Gregory Warren Kelly v. Town of Abingdon, Virginia</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Gregory Warren Kelly</u>
(name of party/amicus)


who is _____<u>Appellant</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO


2.     Does party/amicus have any parent corporations?                    ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:


3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                        ☐YES ☑NO
       If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Thomas E. Strelka                    Date:        11/23/2021

Counsel for: Appellant

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................. iii

I.    JURISDICTIONAL STATEMENT ........................................................ 1

II.   STATEMENT OF ISSUES ................................................................... 2

III.    STATEMENT OF THE CASE ........................................................ 2

IV.  SUMMARY OF ARGUMENT .............................................................. 10

V.   STANDARD OF REVIEW .................................................................. 11

VI.   ARGUMENT ......................................................................................... 13

A. The District Court erred when it determined that the January 2018 letter was not a request for accommodation as a matter of law. Such ruling was premature and inappropriate on a 12b6 Motion .................................................................................. 13

B. Failure to Accommodate under the ADA ...................................... 16

1. *The Town was obligated to engage in the interactive process upon receipt of the January Letter. Reliance on* <u>*Walter*</u> *is misplaced* ................................................................. 19

2. *The District Court erred when it required Kelly to prove that his requested accommodations were in-fact reasonable accommodations for his specific disability under the circumstances* ........................................................ 23

C. Discrimination under the ADA .................................................... 25

1. *The Court impermissibly assumed testimony and facts not before it on a Motion to Dismiss in order to determine that the Town's atrocious treatment of Kelly was not due to his disabilities* ............................................................... 26

i

2. *Kelly provided an inference of discrimination when he alleged that the Town failed to engage in the interactive process* ................................................................. *28*

3. *Kelly provided an inference of discrimination when he alleged that he put the Town on notice of his disabilities when he filed his EEOC charge, and he was constructively discharged less than six months later* ................................ *29*

D. ADA Retaliation ................................................................. 31

E. ADA Interference ............................................................. 34

VII. CONCLUSION .................................................................. 37

VIII. REQUEST FOR ORAL ARGUMENT ............................... 37

CERTIFICATE OF COMPLIANCE ............................................ 38

# TABLE OF AUTHORITIES

## Cases

*Allen v. Rumsfeld,*
273 F. Supp. 2d 695 (D. Md. 2003) ........................................................ 30

*Anderson v. Sch. Bd.,*
Civil Action No. 3:18cv745, 2020 U.S. Dist. LEXIS 94645
(E.D. Va. May 29, 2020) ........................................................ 25

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................ 11

*Barnes v. Metro. Mgmt. Grp., L.L.C.,*
No. 11-CV-3355 AW, 2012 U.S. Dist. LEXIS 59229,
2012 WL 1552799 (D. Md. Apr. 27, 2012) ........................................................ 28

*Bartos v. Bath Iron Works Corp.,*
No. 03-175-P-S, 2003 U.S. Dist. LEXIS 14422
(D. Me. Aug. 19, 2003) ........................................................ 25

*Battle v. Burwell,*
No.: PWG-14-2250, 2016 U.S. Dist. LEXIS 127202
(D. Md. Sept. 19, 2016) ........................................................ 31

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .................. 11-12

*Bocock v. Specialized Youth Servs. of Va., Inc.,*
Civil Action No. 5:14-cv-00050, 2014 U.S. Dist. LEXIS 183457
(W.D. Va. Dec. 15, 2014) ........................................................ 27-28

*Boldin v. Wingfield,*
No. 6:10cv00010, 2010 U.S. Dist. LEXIS 96901
(W.D. Va. Sept. 16, 2010) ........................................................ 24

*Borkowski v. Valley Cent. Sch. Dist.,*
63 F.3d 131 (2d Cir. 1995) ........................................................ 23

*Brown v. City of Tucson,*
336 F.3d 1181 (9th Cir. 2003) ........................................................ 34

*Burt v. Maasberg,*
Civil Action No.: ELH-12-0464, 2014 U.S. Dist. LEXIS 41982
(D. Md. Mar. 28, 2014) .......................................................... 26

*Butler v. City of Prairie Vill., Kan.,*
172 F.3d 736 (10th Cir. 1999) ........................................ 29-30

*Chertkova v. Conn. Gen. Life Ins. Co.,*
92 F.3d 81 (2d Cir. 1996) ............................................... 28, 29

*Clark County School District v. Breeden,*
532 U.S. 268, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) ...................... 30

*Cooksey v. Futrell,*
721 F.3d 226 (4th Cir. 2013) ................................................. 12

*Crabill v. Charlotte Mecklenburg Bd. of Educ.,*
423 F. App'x 314 (4th Cir. 2011) ............................................. 22

*Deloso v. Multifresh, Inc.,*
No. 5:12-cv-01165, 2014 U.S. Dist. LEXIS 205215
(S.D.W. Va. Jan. 21, 2014) ................................................... 27

*Dossous v. NYC Health & Hosps.,*
No. 19-CV-3098 (MKB), 2020 U.S. Dist. LEXIS 176932
(E.D.N.Y. Sept. 25, 2020) .................................................... 27

*Edwards v. Gray,*
7 F. Supp. 3d 111 (D.D.C. 2013) .............................................. 15

*Edwards v. Ill. Dep't of Fin. & Prof'l Regulation,*
210 F. Supp. 3d 931 (N.D. Ill. 2016) ......................................... 33

*Elliott v. QF Circa 37, LLC,*
No. 16-cv-0288-BAS-AGS, 2018 U.S. Dist. LEXIS 98668
(S.D. Cal. June 12, 2018) .................................................... 15

*Feldman v. American Memorial Life Ins. Co.,*
196 F.3d 783 (7th Cir. 1999) ................................................. 29

*Flynn v. Mid-Atlantic Mari-Time Acad.,*
No. 2:18-cv-502, 2019 U.S. Dist. LEXIS 225062
(E.D. Va. July 30, 2019) ..................................................... 30

*Frakes v. Peoria Sch. Dist. No. 150*,
   872 F.3d 545 (7th Cir. 2017) ................................................... 34

*George v. Roush & Yates Racing Engines, LLC*,
   No. 5:11CV00025-RLV, 2012 U.S. Dist. LEXIS 115495,
   2012 WL 3542633 (W.D.N.C. Aug. 16, 2012) ....................................... 28

*Halpern v. Wake Forest Univ. Health Scis.*,
   669 F.3d 454 (4th Cir. 2012) ................................................... 13

*Haneke v. Mid-Atlantic Capital Mgmt.*,
   131 Fed. Appx. 399 (4th Cir. 2005) ............................................. 21

*Hill v. Assocs. for Renewal in Educ.*,
   897 F.3d 232 (D.C. Cir. 2018) .................................................. 14

*Hooven-Lewis v. Caldera*,
   249 F.3d 259 (4th Cir. 2001) ................................................... 30

*Howard v. MTA Metro-N. Commuter R.R.*,
   866 F. Supp. 2d 196 (S.D.N.Y. 2011) ........................................... 28

*Jacobs v. N.C. Admin. Off. of the Courts*,
   780 F.3d 562 (4th Cir. 2015) ................................................... 21

*Jones v. Nationwide Life Ins. Co.*,
   696 F.3d 78 (1st Cir. 2012) .................................................... 16

*Kelleher v. Fred A. Cook, Inc.*,
   939 F.3d 465 (2d Cir. 2019) .................................................... 27

*Laing v. Fed. Express Corp.*,
   703 F.3d 713 (4th Cir. 2013) ................................................... 31

*Lettieri v. Equant, Inc.*,
   478 F.3d 640 (4th Cir. 2007) ................................................... 31

*Littlejohn v. City of New York*,
   795 F.3d 297 (2d Cir. 2015) .................................................... 27

*Manson v. Md. State Bd. of Physicians*,
   No. 1:20-CV-03345-SAG, 2021 U.S. Dist. LEXIS 108112
   (D. Md. June 9, 2021) ...................................................... 14, 15

*Mashni v. Bd. of Educ.*,
No. 15 C 10951, 2017 U.S. Dist. LEXIS 141706
(N.D. Ill. Sept. 1, 2017) ........................................................... 25

*Mays v. Sprinkle*,
992 F.3d 295 (4th Cir. 2021) ................................................ 12

*McBride v. BIC Consumer Prods. Mfg. Co.*,
583 F.3d 92 (2d Cir. 2009) ................................................... 29

*McLean v. United States*,
566 F.3d 391 (4th Cir. 2009) ................................................ 11

*McNair v. District of Columbia*,
No. 15-cv-00729 (APM), 2019 U.S. Dist. LEXIS 92061
(D.D.C. June 3, 2019) ...................................................... 14, 16

*Meaige v. Hartley Marine Corp.*,
925 F.2d 700 (4th Cir. 1991) ................................................ 12

*Monette v. Elec. Data Sys. Corp.*,
90 F.3d 1173 (6th Cir. 1996) ................................................ 24

*Murphy v. County of New Hanover*,
No. 21-1471, 2021 U.S. App. LEXIS 30275 (4th Cir. Oct. 8, 2021) ........ 22

*Nakis v. Potter*,
422 F. Supp. 2d 398 (S.D.N.Y. 2006) ................................... 28

*Natofsky v. City of N.Y.*,
921 F.3d 337 (2d Cir. 2019) ................................................. 27

*Nat'l Fed'n of the Blind v. Lamone*,
813 F.3d 494 (4th Cir. 2016) ............................................... 23

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) ............................................... 12

*Noll v. IBM*,
787 F.3d 89 (2d Cir. 2015) .................................................. 29

*Pandazides v. Va. Bd. of Educ.*,
13 F.3d 823 (4th Cir. 1994) ................................................. 13

*Rehling v. City of Chicago,*
    207 F.3d 1009 (7th Cir. 2000) ........................................................ 19, 20

*Reynolds v. Am. Nat'l Red Cross,*
    701 F.3d 143 (4th Cir. 2012) ................................................... 25

*Riddle v. Citigroup,*
    640 F. App'x 77 (2d Cir. 2016) ................................................ 30

*Rohan v. Networks Presentations LLC,*
    375 F.3d 266 (4th Cir. 2004) ................................................. 25

*Ryder v. Beaumont Health, Inc.,*
    No. 18-10760, 2019 U.S. Dist. LEXIS 175214
    (E.D. Mich. Oct. 9, 2019) ...................................................... 33

*Scheuer v. Rhodes,*
    416 U.S. 232 (1974) .............................................................. 12

*Schmitz v. Alamance-Burlington Bd. of Educ.,*
    No. 1:18CV910, 2020 U.S. Dist. LEXIS 32699
    (M.D.N.C. Feb. 26, 2020) ...................................................... 28

*SD3, LLC v. Black & Decker (U.S.) Inc.,*
    No. 14-1746, 2015 U.S. App. LEXIS 16412 (4th Cir. Sept. 15, 2015) ...... 12

*Sheng v. M&TBank Corp.,*
    848 F.3d 78 (2d Cir. 2017) .................................................... 29

*Taylor v. Principal Fin. Grp., Inc.,*
    93 F.3d 155 (5th Cir. 1996) ................................................... 22

*Trujillo v. PacifiCorp,*
    524 F.3d 1149 (10th Cir. 2008) ............................................. 29

*United States v. City of Hayward,*
    36 F.3d 832 (9th Cir. 1994) .................................................. 34

*US Airways, Inc. v. Barnett,*
    535 U.S. 391, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002) ..................... 23

*Vande Zande v. State of Wisconsin Dep't of Admin.,*
    44 F.3d 538 (7th Cir. 1995) ............................................... 23-24

*Vladimir v. Bioenvision, Inc.*,
606 F. Supp. 2d 473 (S.D.N.Y. 2009) ...................................................... 26

*Walter v. United Airlines, Inc.*,
No. 99-2622, 2000 WL 1587489 (4th Cir. Oct. 25, 2000) ......... 17, 19, 20

*Wilson by Hinn v. North Carolina*,
981 F. Supp. 397 (E.D.N.C. 1997) .......................................................... 14

*Wilson v. Dollar Gen. Corp.*,
717 F.3d 337 (4th Cir. 2013) ........................................................ 14, 16, 21

*Wright v. North Carolina*,
787 F.3d 256 (4th Cir. 2015) .................................................................. 11

## Statutes

28 U.S.C. § 1291 ............................................................................................ 1
28 U.S.C. § 1331 ............................................................................................ 1
28 U.S.C. § 1343 ............................................................................................ 1
42 U.S.C. §§ 12101, *et seq.* ........................................................................... 1

## Other

29 C.F.R. § 1630.2 ......................................................................... 11, 22, 24

*EEOC Enforcement Guidance on Retaliation and Related Issues*,
Sec. III ADA Interference Provision, Number 915.004, n. 177, Aug. 25,
2016, https://www.eeoc.gov/laws/guidance/enforcement-guidance-
retaliation-and-related-issues ............................................................ 34, 36

Fed. R. Civ. P. 12(b)(6) ................................................................. 11, 12, 13

## I.    JURISDICTIONAL STATEMENT

Appellant Gregory Warren Kelly filed suit in the United States District Court for the Western District of Virginia on August 18, 2019 for claims arising from state contract law and federal questions presented by the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA"), as codified under 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(4), due to the acts and omissions of Appellee Town of Abingdon.

On February 3, 2020, the District Court granted Appellee's Motion to Dismiss as to all ADA claims, and Appellant filed a Motion to Amend the Complaint. On May 20, 2020, the District Court granted Appellant's Motion and accepted for filing the Amended Complaint only as to Appellant's ADA retaliation and failure to accommodate claims, dismissing with prejudice his claims for discrimination and interference under the ADA. Following discovery, Appellee moved for summary judgment on the remaining claims, and the District Court granted that Motion as to the remaining ADA claims on September 7, 2021. Appellant's breach of contract claim proceeded to trial.

This Court's jurisdiction rests on 28 U.S.C. § 1291, as the District Court entered a final order dispensing with all the pending claims before it.

Appellee now brings this appeal as to particular aspects of the District Court's Orders of February 3, 2020, and May 20, 2020, dismissing in whole or in part Appellant's ADA claims.

## II.    STATEMENT OF ISSUES

1. The District Court erred in ruling as a matter law that Kelly's request for additional accommodations through letter by counsel ("January Letter") did not constitute a request for accommodations under the Americans with Disabilities Act, thus curtailing Kelly's ADA claims that were accepted by the Court on Amendment (Counts II and III).

2. The District Court erred in granting Defendant's Motion to Dismiss as to the ADA discrimination and interference claims.

3. The District Court erred in denying Kelly's Motion to Amend as to the ADA discrimination and interference claims (Counts I and IV) raised in his proposed Amended Complaint.

## III.    STATEMENT OF THE CASE

In or about March of 2005, the Town hired Mr. Kelly as Town Attorney, and the Town later appointed him Town Manager. (J.A. 236, Am. Compl. ¶ 7). In both roles, Mr. Kelly reported to the Abingdon Town Council, led by the Mayor of Abingdon. (J.A. 237, Am. Compl. ¶ 12). Mr. Kelly suffers from disabilities, to-wit, anxiety, high blood pressure and depression, which affect various aspects of his daily life. (J.A. 237, Am. Compl. ¶ 10). Throughout his employment, Mr. Kelly had one-on-one conversations with Town Council members about his disabilities and their physical effect on him, but Mr.

Kelly's supervisors were unresponsive. (J.A. 252, Am. Compl. ¶ 48). In fact, during the last year of his employment, his health issues were severely exacerbated due to the often unprofessional and occasionally outrageous actions of the Town Council and the Mayor. (J.A. 237, Am. Compl. ¶ 12).

Mr. Kelly worked day-to-day in a severe and pervasive hostile working environment and suffered physical affects as a result. (J.A. 238, Am. Compl. ¶ 13). His blood pressure was abnormally high, causing him to feel faint and suffer "dizzy spells" at work and prompting his staff to purchase a blood pressure cuff to routinely check his blood pressure at work. (J.A. 238, 245, Am. Compl. ¶¶ 14, 39). He couldn't concentrate, suffered from insomnia, and had difficulty performing simple work tasks such as reading and writing emails and responding to various inquiries. *Id.* Mr. Kelly experienced panic attacks, crippling anxiety, disorientation, and confusion because of the combative environment in which he worked. *Id.* On a few occasions, fellow employees pleaded with him to go home or seek medical addition immediately. *Id.*

Though he performed his job exceptionally well, Mr. Kelly suffered continuous threats and intimidation due to his disabilities. Both the Mayor and the Vice Mayor consistently threatened him with termination if he did not comport with the individual agenda of each. (J.A. 238-239, Am. Compl.

¶ 15). They told Mr. Kelly he needed "to get on board" and "support [them]" or "it would not go well for [him]." (J.A. 239, Am. Compl. ¶¶ 16-17). Another council member,Mayor Wayne Craig, threated Mr. Kelly that if the anti-development group, the "Friends of Abingdon" (FOA), did not get their way, Mr. Kelly would be terminated. (J.A. 239, Am. Compl. ¶ 30). "Greg," Mr. Craig intimated, "I am a member of FOA, so take that to heart." *Id.*

Even though Mr. Kelly was in charge of Town staffing, the Mayor took advantage of his vulnerable condition and demanded that he rehire an employee that he had dismissed. (J.A. 239, Am. Compl. ¶ 17). The Vice Mayor verbally attacked Mr. Kelly's newly hired Director of Tourism, purposefully and consistently mispronounced his name, and drove him to quit. (J.A. 241, Am. Compl. ¶¶ 23-28). Council Member Wayne Craig told an employee in front of other employees at a Town Christmas breakfast that his boss, a departmental director hired by Mr. Kelly, "was an asshole." (J.A. 243-244, Am. Compl. ¶¶ 32-33).

Despite his high blood pressure, Town Council members put increased and unnecessary pressure on Mr. Kelly when they belittled him with insults and obscenities publicly and privately. The Vice Mayor regularly belittled and humiliated Mr. Kelly in Council meetings, Planning Commission meetings, and meetings of the Historic Board of Architectural Review. (J.A.

242, Am. Compl. ¶ 29). Mr. Kelly not only suffered personal attacks, but had to, in his disabled state, deal with the fallout from the Vice Mayor's behavior. Specifically, members of the public who had business before the Town would contact Mr. Kelly and threaten legal action against the Town if Mr. Kelly did not "get [the Vice Mayor] under control," and Mr. Kelly's subordinates needed regular encouragement, consolation, and protection from the Vice Mayor's outbursts. (J.A. 242, Am. Compl. ¶ 29). The Vice Mayor would often phone Mr. Kelly, Town Attorney Deb Icenhour, and former Town Clerk Cecile Rosenbaum late at night or during early morning hours in a drunken rage, when things happened in the Town that he didn't like but were beyond the control of Town's management. (J.A. 240-241, Am. Compl. ¶¶ 19-21).

On September 13, 2017, Mr. Kelly filed a Charge of Discrimination with the EEOC. (J.A. 246, Am. Compl. ¶ 43). Mr. Kelly filed a second Charge of Discrimination with the EEOC on December 27, 2017. *Id.* The Town Council's behavior did not abate. Rather, Mr. Kelly experienced increased hostility, as well as regular invasions of his privacy and private communications. (J.A. 240, 244, 246, Am. Compl. ¶¶ 18, 34, 42-43).

Mr. Kelly had reason to believe that the Mayor attempted to access his private communications and delete messages when she asked to borrow his computer. (J.A. 244, Am. Compl. ¶ 34). (The Mayor asked to borrow the

computer belonging to the Town Attorney on the same day.) *Id.* In another circumstance, the Mayor insisted on searching for an email on Mr. Kelly's phone while he was driving, and perused his private communications. (J.A. 244, Am. Compl. ¶ 36). She did the same thing with his smart watch, returning it in such a condition that indicated to Mr. Kelly that she had searched for private communications. (J.A. 245, Am. Compl. ¶ 38). After Mr. Kelly filed his EEOC charge, his private drive on his computer was erased. (J.A. 245, Am. Compl. ¶ 37).

On January 10, 2018, on the advice of his physician to seek reasonable accommodations, Mr. Kelly's attorney sent a letter to the Town requesting twelve possible accommodations for his disabilities. (J.A. 247-250, 280-283, Am. Compl. ¶ 44, Ex. C.). Mr. Kelly attempted to engage in the interactive process with the Town prior to directing his attorney to send accommodation requests, to no avail. Mr. Kelly's reasonable accommodation requests were as follows:

- That all Members of the Town Council and Town Management have a fundamental understanding of the Town Charter;

- That the Town Council and Town Management have a fundamental understanding of the Code of Ethics and that all parties continually work toward operating in total compliance with the Code of Ethics on a day-to-day basis;

- That the Town Council acknowledge that it is inappropriate for the members of the Town Council to give directives to subordinate employees of Town Management;

- That members of Town Council cease threatening the termination of a Town employee's job on a weekly, sometimes daily, basis;

- That the Town Council give greater consideration to diversity in hiring Town personnel with an emphasis on the hiring of women in management positions;

- That the Town Council recognize it is the role of the Mayor to act as liaison between Town Council and Town Management;

- That members of Town Council begin working together with Town Management to establish trust between the parties;

- That every member of Town Council utilize courtesy and care in all communications with Town Management;

- That all Town staff be treated equally in the eyes of the members of Town Council;

- That the Town Council be mindful of the bounds of individual employees' roles within the Town structure, or alternatively, that written policies or job descriptions clarify roles, duties, and responsibilities;

- That Town Council acknowledge that this is a team and within the best interest of the Town for Town Council to support and defend Town Management; and

- That Town Council, working with Town Management, work in conjunction to draft written standing policies to provide guidance to all individuals.

Mr. Kelly "revealed his disabilities to his supervisors at the Town and requested reasonable accommodation." (J.A. 258, Am. Compl. ¶ 69). Yet despite their knowledge of Mr. Kelly's physical manifestations of his disabilities, high blood pressure, depression, and anxiety, and in spite of Mr. Kelly requesting reasonable accommodations, for these Town leaders to cease the activities that caused Mr. Kelly's health issues, the Town ignored Mr. Kelly's request, and the

council members' behavior continued unabated. (J.A. 255, Am. Compl. ¶ 56). The Town did not acknowledge the letter for three months, and the Council Members escalated their abuse, telling Mr. Kelly that they, as elected officials, were not subject to the requirements of ordinary business employers. (J.A. 251, 253, Am. Compl. ¶¶ 46, 51). The abuse of Mr. Kelly at public Town Council meetings and other departmental meetings continued, with Mr. Craig calling Mr. Kelly an "asshole" in a meeting of engineers. (J.A. 252-253, Am. Compl. ¶¶ 49-50). Council members increased their threats to terminate Mr. Kelly's employment. (J.A. 254, Am. Compl. ¶ 53). They continued to undermine his role as Town Manager, frequently directing Town department heads in opposition to his orders, often to affect their individual agendas. (J.A. 254, Am. Compl. ¶ 54).

During the Spring of 2018, Cecile Rosenbaum, the Town's Clerk, separated from employment after publishing an article about a sexual harassment incident in the Town Hall elevator,[1] and filing an EEOC charge against the Town. (J.A. 243, 251-252, Am. Compl. ¶¶ 31, 47). Following Ms. Rosenbaum's departure, the Mayor tightened the screws on Mr. Kelly,

[1] At the time the article was published in the Virginia Local Government Manager's Association (VLGMA) Newsletter, Council Member Wayne Craig observed to Mr. Kelly: "Damn Greg, what's her problem? If a female tried to harass me in an elevator, I would welcome it." (J.A. 243, Am. Compl. ¶ 31)

restricted his movement, and failed to provide any accommodation for his disabilities, saying, "[W]e got rid of one big problem and now it's time to get the Town under control. We expect you to be in the office and not at the other departments or visiting work sites." (J.A. 251-252, Am. Compl. ¶ 47). The increased demands and increased interference with his staff caused Mr. Kelly's health to suffer even more. (J.A. 246, Am. Compl. ¶ 43).

Finally, in April of 2018, the Town's attorney responded to Mr. Kelly's January letter, stating that it would engage in the interactive process, but when Mr. Kelly responded and pursued a meeting with the Town, he received no reply. (J.A. 251, Am. Compl. ¶ 46). On May 7, 2018, after the Town continued to fail to engage in the interactive process, created a hostile work environment, and retaliated against Mr. Kelly for submitting accommodations requests and filing two Charges of Discrimination with the EEOC, Mr. Kelly was left no alternative but to be constructively discharged from employment. (J.A. 253-254, Am. Compl. ¶ 52.) Mr. Kelly suffered a constructive discharge, in violation of the ADA, because the Town discriminated and retaliated against Mr. Kelly for filing previous EEOC Charges, for being disabled and requesting accommodations for those disabilities, and by failing to properly accommodate his disabilities.

On July 27, 2018, Mr. Kelly filed his third Charge of Discrimination with the EEOC due to his constructive discharge in order to administratively exhaust his then-and-now-ripe claims for ADA discrimination and retaliation. (J.A. 236, Am. Compl. ¶ 4.) He received a Dismissal and Notice of Rights from the EEOC dated May 22, 2019. (J.A. 274-277, Am. Compl. Ex. A.)

## IV. SUMMARY OF ARGUMENT

Mr. Kelly assigns error to the District Court's determination that as a matter of law, his January 2018 letter was not a request for accommodation. This erroneous ruling reduced his failure to accommodate claim to a single request that he be allowed to take "short breaks," which did not address the gravamen of the requests that Mr. Kelly made to the Town to change the tenor of his work environment. Furthermore, without acceptance of the letter as a request for accommodation under the statute, the District Court examined only Mr. Kelly's EEOC filings as the protected conduct that underlay his retaliation claim, when Mr. Kelly specifically pled that his work environment in the Town Hall severely worsened in all the ways that he asked for improvement in his letter, tying his experience of increased bad acts (which ultimately led to his constructive discharge) directly to his protected activity.

With regard to Mr. Kelly's failure to accommodate claim, the District Court incorrectly held that the Town had no duty to enter into an interactive dialogue under 29 CFR 1630.2(o)(3), as employers are relieved of their obligation to establish an interactive dialog only when they have otherwise accommodated the disabled employee or in other limited circumstances not present in this case. The District Court prematurely dismissed Mr. Kelly's failure to accommodate claim at the motion to dismiss stage, because an analysis of whether a requested accommodation is "reasonable" is a question of fact not suitable for determination on the pleadings alone.

Finally, Mr. Kelly has sufficiently pled interference and discrimination claims under the ADA.

## V. STANDARD OF REVIEW

While "the factual allegations in a complaint must make entitlement to relief plausible," Rule 12(b)(6) does not countenance "dismissals based on a judge's disbelief of a complaint's factual allegations." *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009). Certainty is not required to survive a motion to dismiss. *Wright v. North Carolina*, 787 F.3d 256, 268 (4th Cir. 2015). This plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556,

127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The proper inquiry is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [its] claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

An appellate court reviews de novo an appeal from a Rule 12(b)(6) dismissal, accepting the complaint as true and drawing reasonable inferences in the plaintiff's favor. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2013). On appeal, an appellate court draws the relevant facts only from allegations in the appellant's complaint and from sources incorporated into that complaint. *SD3, LLC v. Black & Decker (U.S.) Inc.*, No. 14-1746, 2015 U.S. App. LEXIS 16412, at *4 (4th Cir. Sep. 15, 2015). The court may not rely on facts not found in the complaint or draw inferences in the appellee's favor. *See Mays*, 992 F.3d at 304-05 (4th Cir. 2021). A dismissal for failure to state a claim should be upheld only if it appears that the plaintiff can prove no set of facts that would entitle him to relief. *Meaige v. Hartley Marine Corp.*, 925 F.2d 700, 702 (4th Cir. 1991).

## VI.  ARGUMENT

### A. The District Court erred when it determined that the January 2018 letter was not a request for accommodation as a matter of law. Such ruling was premature and inappropriate on a 12b6 Motion.

Ruling on the Town's Motion to Dismiss, the District Court held that the January 10, 2018, letter from Mr. Kelly's counsel ("January Letter") was not a request for accommodation because "the requests [were] not tied to limitations caused by any particular disabilities and are not even specific to Kelly." J.A. 146, Order 2/3/20, p. 18. This ruling was upheld in the Court's ruling on Mr. Kelly's Motion for Leave to Amend. J.A. 231, Order 5/20/20, p. 16.

By determining that there was no connection between Mr. Kelly's requested accommodations and his disability, the District Court necessarily determined that Mr. Kelly's requests were not reasonable accommodations under the statute. Whether or not the employee has identified a reasonable accommodation, however, is necessarily a fact-intensive exercise. *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012). *See also Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994) (declaring the reasonableness of any accommodations under the Rehabilitation Act, to be questions of fact). "The question of whether an accommodation request is reasonable is generally a question of fact that the Fourth Circuit has

determined is ill-suited for disposition at summary judgment, let alone the motion to dismiss stage." *Manson v. Md. State Bd. of Physicians*, No. 1:20-CV-03345-SAG, 2021 U.S. Dist. LEXIS 108112, at *7 (D. Md. June 9, 2021) (citation omitted)). *Accord Wilson by Hinn v. North Carolina*, 981 F. Supp. 397, 400 (E.D.N.C. 1997) ("the question of whether an accommodation is reasonable under the circumstances is a factual one not to be resolved by the court on summary judgment.")

Additionally, a court's determination of a proposed accommodation's reasonableness, i.e., one which would have enabled the employee to perform his job's essential functions, is not one which is made on the pleadings alone. *See Wilson,* 717 F.3d at 347 ("It is clear <u>from the record</u> that no reasonable accommodation could have enabled Wilson to perform the essential functions of his position") (granting summary judgment for the employer). *See also Hill v. Assoc. for Renewal*, 897 F.3d 232, 239 (D.C. Cir. 2018) (connection between requested accommodation and disability <u>established by plaintiff's own documentary evidence</u>) (summary judgment decision); *McNair v. District of Columbia*, No. 15-cv-00729 (APM), 2019 U.S. Dist. LEXIS 92061, at *2-5 (D.D.C. June 3, 2019) (connection established by doctor's letter and plaintiff's own testimony) (summary judgment decision).

A court may determine a request for an accommodation unreasonable such that it cannot support a failure to accommodate claim <u>only</u> in situations where the proposed accommodation is either unreasonable on its face or has no relationship to the claimed disability. *See, e.g., Edwards v. Gray*, 7 F. Supp. 3d 111, 115 (D.D.C. 2013) (granting employer's motion to dismiss on accommodation claim when plaintiff requested a visit to a psychiatrist to accommodate his diabetes). *Elliott v. QF Circa 37, LLC*, No. 16-cv-0288-BAS-AGS, 2018 U.S. Dist. LEXIS 98668, at *21-23 (S.D. Cal. June 12, 2018) (plaintiff's request for management to unlock her apartment door not reasonably related to her previous articulations of disability which required an emotional support animal). *Manson v. Md. State Bd. of Physicians*, No. 1:20-CV-03345-SAG, 2021 U.S. Dist. LEXIS 108112, at *7 (D. Md. June 9, 2021) (plaintiff who suffered from autism did not make a reasonable request for accommodation under the ADA when he asked the state licensing board to remove records of his license application denials).

Mr. Kelly's request for management to abide by the Town's code of ethics was sufficiently related to his need for the threats, abuse, and humiliation to cease, and for the Town Hall to be run according to certain codes and procedures which ensured order and predictability. Such an environment would help, rather than exacerbate Mr. Kelly's high blood

pressure and anxiety. The rare situation in which a court granted an employer's motion to dismiss, finding that even "had a good faith interactive process occurred, the parties could [not] have found a reasonable accommodation that would enable the disabled person to perform the job's essential functions," *Wilson*, 717 F.3d at 347 (4th Cir. 2013) (*citing Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 91 (1st Cir. 2012)), is not present here. Mr. Kelly's request for civility in order to accommodate his high blood pressure and anxiety "seems reasonable on its face." *McNair v. District of Columbia*, No. 15-cv-00729 (APM), 2019 U.S. Dist. LEXIS 92061, at *2-5 (D.D.C. June 3, 2019) (employee asking for a change of hours which would shorten her commute time and cause less stress on her injured knee).

## B. Failure to Accommodate under the ADA

To state a claim for failure to accommodate under the ADA, a plaintiff must allege (1) that he was an individual who had a disability within the meaning of the statute (anxiety, high blood pressure); (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013).

The District Court granted the Town's Motion to Dismiss as to Mr. Kelly's failure to accommodate claim holding that Mr. Kelly's averred request to take short breaks did not fulfill the third element: It "does not explain why short breaks were necessitated by his disabilities or how they would have helped him to perform the essential functions of his job." J.A. 145, Order 2/3/20, p. 17. It also found that contrary to Fourth Circuit precedent, Mr. Kelly premised his failure to accommodate claim solely on the Town's failure to "engage in an interactive process with him." J.A. 145, Order 2/3/20, p. 17, *citing Walter v. United Airlines, Inc.*, No. 99-2622, 2000 WL 1587489, at *4 (4th Cir. Oct. 25, 2000). Finally, the Court based the dismissal of the failure to accommodate claim on its erroneous holding that the January Letter was not a request for accommodation.

In his First Amended Complaint, Mr. Kelly alleged that he suffered from multiple disabilities including high blood pressure and anxiety, (J.A. 237, 257, 260, 263, 266, Am. Compl. ¶¶ 10, 65, 80, 97, 111), that the work environment in the Town Hall was made toxic by in-fighting among the Town Council members, (J.A. 238, Am. Compl. ¶¶ 13-14), that he was consistently and personally attacked (J.A. 242, Am. Compl. ¶ 29), that his job was often threatened (J.A. 238-239, 242-243, 267, Am. Compl. ¶¶ 15, 30, 116), that the Council members, driven by their own agendas, caused havoc

among Mr. Kelly's subordinates, (J.A. 240, 242, 254, Am. Compl. ¶¶ 19, 29, 54), and that the chaotic environment aggravated his disabilities and affected him physically (J.A. 238, 245, 246, 247-250, Am. Compl. ¶¶ 14, 39, 40, 44). The January letter simply asked the Town Council to operate with civility and in accordance with established policy and codes of conduct. (J.A. 247-250, Am. Compl. ¶ 44). This simple proposed change in Mr. Kelly's work environment would lower the toxicity levels and enable Mr. Kelly to manage his employees and transact Town business. (J.A. 247-250, Am. Compl. ¶ 44). The Town repeatedly failed to engage in the interactive process required to isolate any possible accommodations that could have suited the working environment and accommodated the physical manifestations of Mr. Kelly's disabilities. (J.A. 251, Am. Compl. ¶ 46). That refusal to engage resulted in the failure to identify appropriate accommodation. (J.A. 250, Am. Compl. 45)

Ruling on Mr. Kelly's Motion for Leave to Amend, the District Court revisited the failure to accommodate claim, but did not change its earlier ruling that the January Letter "could not support [Kelly's] failure to accommodate claim." J.A. 231, Order 5/20/20, p. 16. It did find, however, that Mr. Kelly's First Amended Complaint sufficiently stated "why short breaks were necessitated by his disabilities." J.A. 231, Order 5/20/20, p. 16.

The Court's ruling gutted Mr. Kelly's failure to accommodate claim as it moved forward solely on Mr. Kelly's request for "short breaks," and the claim was defeated at summary judgment. Mr. Kelly assigns error to the District Court's determination that he did not state a claim for failure to accommodate when he alleged that he requested accommodations in the January Letter and the Town refused to engage in the interactive process.

**1. The Town was obligated to engage in the interactive process upon receipt of the January Letter. Reliance on _Walter_ is misplaced.**

It is true that "an employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process. Rather, the employee must demonstrate that the employer's failure to engage in the interactive process resulted in the failure to identify an appropriate accommodation for the disabled employee." _Walter_, at *11-12 (_citing Rehling v. City of Chicago_, 207 F.3d 1009, 1016 (7th Cir. 2000)).

This maxim from _Rehling_ is often quoted in the Fourth Circuit, but the _Rehling_ holding is not a shield for those employers who do not enter into the interactive process. Rather this statement of law protects <u>employers who have made accommodations</u> and have fulfilled the purpose of the

regulations—even if they omit the step of meeting with the employee to determine a reasonable accommodation.

> Our conclusion that a plaintiff cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process is consistent both with this Court's assertion that the interactive process is a means and not an end in itself, and with the remedial purposes of the ADA. The ADA seeks to ensure that qualified individuals are accommodated in the workplace, not to punish employers <u>who, despite their failure to engage in an interactive process, have made reasonable accommodations</u>. To hold employers liable for the failure of an interactive process regardless of whether a reasonable accommodation was made would not serve the underlying purposes of the ADA, and would, contrary to our own precedent, elevate the ADA's interactive process requirement to an end in itself.

*Rehling* at 1016 (emphasis added). The *Walter* decision tracks with *Rehling*. In *Walter*, the Fourth Circuit upheld the decision of the District Court, which granted summary judgment in the employer's favor even though the employer did not "engage in an 'interactive process' . . . *because United reasonably accommodated Walter's photosensitivity disability[.] [Thus,] United's alleged failure to engage in an interactive process is of no consequence." Walter,* at *14 (emphasis added).

*Walter* does not stand for the proposition that Mr. Kelly may not bring a failure to accommodate claim based upon the Town's refusal to engage in the interactive process. Under *Walter* and *Rehling*, Mr. Kelly may certainly

bring such a claim—not because there was no interactive process--but because the failure to engage resulted in the failure to accommodate.

In the absence of extenuating circumstances, the duty to engage in the interactive process remains unless and until the disabled employee has been accommodated. *Haneke v. Mid-Atlantic Capital Mgmt.*, 131 Fed. Appx. 399, 400 (4th Cir. 2005) (unpublished) (finding that "[i]mplicit in the fourth element is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation"). In fact, the only way an employer can avoid the duty to engage in the interactive process is if the employee is not actually disabled under the statute or if she cannot suggest a reasonable accommodation. *See Wilson,* 717 F.3d at 347; *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 581 (4th Cir. 2015) ("an employer will not be liable for failure to engage in the interactive process *[unless]the employee ultimately fails to demonstrate the existence of a reasonable accommodation* that would allow her to perform the essential functions of the position.")

Under the statute, an employee's only responsibility is to notify the employer of the disability and request an accommodation. *Wilson*, 717 F.3d at 346-47 (citations omitted) ("The duty to engage in an interactive process to identify a reasonable accommodation is generally triggered when an

employee communicates to his employer his disability and his desire for an accommodation for that disability.") *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 322-23 (4th Cir. 2011) (*citing Taylor v. Principal Fin. Group, Inc.,* 93 F.3d 155, 165 (5th Cir. 1996)) ("the employee's initial request for an accommodation . . . triggers the employer's obligation to participate in the interactive process of determining one"); *Murphy v. Cty. of New Hanover*, No. 21-1471, 2021 U.S. App. LEXIS 30275, at *2-3 (4th Cir. Oct. 8, 2021) ("After an employee establishes she has a 'disability' requiring accommodation, an employer has a duty to engage in an 'interactive process' to determine an appropriate accommodation.")

The employee is neither tasked with alleging the precise limitations he faces, nor charged with articulating the reasonable accommodations which the employer must adopt to overcome those limitations. Instead, the statute places these two detailed findings under the "interactive process." *See* 29 CFR 1630.2(3) ("*This process* should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.") (emphasis added).

**2. The District Court erred when it required Kelly to prove that his requested accommodations were in-fact reasonable accommodations for his specific disability under the circumstances.**

*Walter*'s requirement that "the employee must demonstrate that the employer's failure to engage in the interactive process resulted in the failure to identify an appropriate accommodation for the disabled employee" does not raise the bar for a plaintiff by requiring a higher standard of pleading that the requested accommodation would *in fact* address the employee's disability and fulfill the employer's business needs.

To allege an employer failed to provide a reasonable accommodation, an employee "need only show that an 'accommodation' seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002) (citations omitted). This burden is "only a burden of production. . . . [which] is not a heavy one." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995) (internal citations omitted). "It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 507-08 (4th Cir. 2016) (*quoting Borkowski,* 63 F.3d at 138). *See also Vande Zande v. State of Wisconsin Dep't of Admin.*, 44 F.3d 538, 543 (7th

Cir. 1995). *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996).

According to the statute, a reasonable accommodation includes, among other things, a "[m]odification[] or adjustment[] to the work environment . . . that enable[s] an individual with a disability . . . to perform the essential functions of that position." 29 CFR 1630.2(o)(1)(ii). Therefore, to state a claim, the employee must allege some nexus between the accommodation she sought and her disability. *Boldin v. Wingfield*, No. 6:10cv00010, 2010 U.S. Dist. LEXIS 96901, at *6 (W.D. Va. Sep. 16, 2010) (reasonable accommodation in housing).

In his First Amended Complaint, Mr. Kelly alleged that the constant threats, humiliation, haranguing, and undermining of his role was aggravating his disabilities and producing ill effects physically—specifically panic attacks, dizzy spells, and dangerously high blood pressure—and that operating in an orderly environment defined by the Town's established policies and procedures would enable him to perform the functions of his job. (J.A. 238, 245, 246, 247-250, Am. Compl. ¶¶ 14, 39, 40, 44). This is sufficient to state a claim. When an employee's disability makes him more sensitive to environmental stressors, courts have upheld requests for changes to an employee's work environment as requests for reasonable

accommodations. *See Mashni v. Bd. of Educ.*, No. 15 C 10951, 2017 U.S. Dist. LEXIS 141706, at *14-15 (N.D. Ill. Sep. 1, 2017) (employee's request to be transferred to another position—away from the harassers who were exacerbating his anxiety—was not unreasonable as long as there was an open position for which she was qualified); *Bartos v. Bath Iron Works Corp.*, No. 03-175-P-S, 2003 U.S. Dist. LEXIS 14422, at *2-4 (D. Me. Aug. 19, 2003) (requests for a quieter and less disruptive work space were reasonable); *Anderson v. Sch. Bd.*, Civil Action No. 3:18cv745, 2020 U.S. Dist. LEXIS 94645, at *36-38 (E.D. Va. May 29, 2020) (requests for scent-free environment not unreasonable as a matter of law).

### C. Discrimination under the ADA

To establish a *prima facie* case of discrimination under the ADA, a plaintiff is required to produce evidence sufficient to demonstrate that (1) he was a qualified individual with a disability; (2) he was terminated from employment; (3) he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) the circumstances of his discharge raise a reasonable inference of unlawful discrimination. *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (*citing Rohan v. Networks Presentations* LLC, 375 F.3d 266, 273 n.9 (4th Cir. 2004) (internal quotation marks omitted)). In its Order of 5/20/20 (J.A. 216), the Court

determined that Mr. Kelly satisfied the first three elements but dismissed the cause of action on the fourth element, finding that the "new allegations [in the First Amended Complaint] do not raise a reasonable inference of disability-based discrimination." J.A. 228, Order 5/20/20, p. 13. [Court says they were personal and political but unrelated to his disability because everyone was subject to Council's wrath].

### 1. *The Court impermissibly assumed testimony and facts not before it on a Motion to Dismiss in order to determine that the Town's atrocious treatment of Kelly was not due to his disabilities.*

In denying Mr. Kelly's Motion to Amend as to his ADA discrimination claim, the District Court determined that "[w]hile the alleged actions and statements by Humphreys and Lowe are regrettable if true, the First Amended Complaint suggests that they were driven by political and personal motivations unrelated to Kelly's disabilities." J.A. 228-229, Order 5/20/20, p. 13-14. "At the motion to dismiss stage, 'courts may find that purpose and intent may not be divined without some investigation and discovery.'" *Burt v. Maasberg*, Civil Action No. ELH-12-0464, 2014 U.S. Dist. LEXIS 41982, at *54 (D. Md. Mar. 28, 2014) (*quoting Vladimir v. Bioenvision, Inc.*, 606 F. Supp. 2d 473, 491 (S.D.N.Y. 2009)). A court does not weigh evidence in considering a motion to dismiss; it assumes all factual allegations in the Plaintiff's complaint to be true, and then determines

whether the Plaintiff has stated a claim upon which relief could be granted. *Deloso v. Multifresh, Inc.*, No. 5:12-cv-01165, 2014 U.S. Dist. LEXIS 205215, at \*11 (S.D. W. Va. Jan. 21, 2014).

When deciding whether to dismiss a plaintiff's claim for discrimination under the ADA, courts "examine the complaint to determine whether it contains 'at *least minimal support* for the proposition that the employer was motivated by discriminatory intent.'" *Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 470 (2d Cir. 2019) (quotation omitted) (emphasis added). "The facts required . . . to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give *plausible support to a minimal inference* of discriminatory motive." *Dossous v. NYC Health & Hosps.*,[2] No. 19-CV-3098 (MKB), 2020 U.S. Dist. LEXIS 176932, at \*8-9 (E.D.N.Y. Sep. 25, 2020) (*citing Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis added)). Likewise, Courts in this Circuit "generally do not require extensive pleading to raise an inference that unlawful discrimination was a motivating factor in termination." *Bocock v. Specialized Youth Servs. of Va., Inc.*, Civil Action

---

[2] Like the Fourth Circuit, the Second Circuit also employs the "but for" causation standard in ADA cases. *Natofsky v. City of N.Y.*, 921 F.3d 337, 349 (2d Cir. 2019).

No. 5:14-cv-00050, 2014 U.S. Dist. LEXIS 183457, at *15-16 (W.D. Va. Dec. 15, 2014) (*citing George v. Roush & Yates Racing Engines, LLC*, No. 5:11cv25-RLV, 2012 U.S. Dist. LEXIS 115495, 2012 WL 3542633, at *4-5 (W.D.N.C. Aug. 16, 2012); *Barnes v. Metro. Mgmt. Grp.*, LLC, No. 11-cv-3355 AW, 2012 U.S. Dist. LEXIS 59229, 2012 WL 1552799, at *4 (D. Md. Apr. 27, 2012)). At a later stage in the litigation, this inference may be rebutted by additional facts, but at this point, the inference must be drawn in Plaintiff's favor. *Schmitz v. Alamance-Burlington Bd. of Educ.*, No. 1:18CV910, 2020 U.S. Dist. LEXIS 32699, at *28 (M.D.N.C. Feb. 26, 2020).

### 2. *Kelly provided an inference of discrimination when he alleged that the Town failed to engage in the interactive process.*

Inference of discrimination "is a 'flexible [standard] that can be satisfied differently in differing factual scenarios.'" *Howard v. MTA Metro-N. Commuter R.R.*, 866 F. Supp. 2d 196, 204 (S.D.N.Y. 2011) (*quoting Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)). The nexus between the adverse action and the discriminatory animus "need not be direct." *Nakis v. Potter*, 422 F.Supp.2d 398, 421 (S.D.N.Y. 2006).

Mr. Kelly alleged in his First Amended Complaint that he filed two EEOC charges on September 13, 2017, and December 27, 2017, putting the Town on notice of his specific disabilities. (J.A. 246, Am. Compl. ¶¶ 42-43).

He also averred that after proposing a number of changes at the Town Hall which would address the toxic situation and accommodate his disabilities, the Town ignored his January Letter for three months and never entered into the interactive process. (J.A. 251, Am. Compl. ¶ 46). At least two sister Circuits have held that failure to engage in a good-faith interactive process under ADA is evidence tending to show disability discrimination. *Sheng v. M&T Bank Corp.*, 848 F.3d 78, 86 (2d Cir. 2017); *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 97-98 (2d Cir. 2015); *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 101 (2d Cir. 2009). *See also Feldman v. American Memorial Life Ins. Co.*, 196 F.3d 783, 789 (7th Cir. 1999) (an ADA discrimination claim can be premised on lack of accommodation or disparate treatment).

### 3. Kelly provided an inference of discrimination when he alleged that he put the Town on notice of his disabilities when he filed his EEOC charge, and he was constructively discharged less than six months later.

The time or sequence of events leading to plaintiff's termination give rise to an inference of discrimination. *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). "Depending on the specific facts of the case, temporal proximity can contribute to an inference of discrimination." *Trujillo v. PacifiCorp.*, 524 F.3d 1149, 1157 (10th Cir. 2008) (*citing Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 749 (10th Cir. 1999)

(temporal proximity between ADA plaintiff's request for accommodation and decline in his work evaluations and satisfaction with his work performance contributed to discriminatory inference)).

While Mr. Kelly has not pled specific facts that allege a causal connection, temporal proximity between the protected activity and the adverse action may indirectly satisfy this requirement at the pleading stage. *See Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (Summary Order) (*citing Clark County School District v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)) (internal quotations and citations omitted). Courts in this Circuit have found time lags of between six and eight months between notice of a disability and an adverse employment action not to defeat an inference of discriminatory intent based upon temporal proximity. *See Flynn v. Mid-Atlantic Mari-Time Acad.*, No. 2:18-cv-502, 2019 U.S. Dist. LEXIS 225062, at *30-31 (E.D. Va. July 30, 2019) (temporal proximity not defeated when employer was made aware of disability eight months prior to termination); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001) (placing the limit on lag time to establish temporal proximity at six months); *Allen v. Rumsfeld*, 273 F.Supp.2d 695, 708 (D. Md. 2003) (passage of as much as four months may still be sufficient temporal proximity to infer a causal connection).

However, even in "cases where 'temporal proximity . . . is missing, courts may look to the intervening period for other evidence of [discriminatory] animus.'" *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (citation omitted); *Battle v. Burwell*, No. PWG-14-2250, 2016 U.S. Dist. LEXIS 127202, at *48-49 (D. Md. Sep. 19, 2016). Mr. Kelly's First Amended Complaint is replete with evidence of discriminatory animus following his filing of his EEOC charges and his January 2018 request for accommodation. His employment was regularly threatened. (J.A. 254, Am. Compl. ¶ 53). He was belittled for attempting to take care of his health. (J.A. 251, Am. Compl. ¶ 46). He was humiliated publicly and privately addressed with profane and abusive language. (J.A. 251-252, Am. Compl. ¶ 47). His autonomy and authority over his work and his subordinates was regularly and actively undermined. (J. A. 254, Am. Compl. ¶ 54).

### D. ADA Retaliation

In order to state a claim for retaliation, a plaintiff must plead that he: (1) engaged in a protected activity under the ADA, (2) suffered an adverse employment action, and (3) that there is a causal connection between the protected activity and the adverse employment action. *Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013).

In Mr. Kelly's First Amended Complaint, he averred that he filed EEOC charges and requested accommodations for his disabilities (J.A. 261, Am. Compl. ¶¶ 83-84, 86), that the Town retaliated against him by refusing to engage in dialogue with him, increased their threats and harassment toward him, and ultimately caused Mr. Kelly's constructive discharge. (J.A. 261, Am. Compl. ¶ 85). Mr. Kelly further alleges that the Town would not have taken this action against Mr. Kelly were it not for his requests for reasonable accommodations. (J.A. 262, Am. Compl. ¶ 87).

Mr. Kelly firmly grounded his retaliation claim in the protected activity of requesting reasonable accommodation, represented by the January Letter, but the District Court never examined Mr. Kelly's retaliation claim based upon the January Letter, having erroneously determined that the letter was not a request for accommodation as a matter of law. Instead, the Court found that Mr. Kelly had sufficiently averred the first two elements of the cause of action, and that he stated a causal link with respect to only the EEOC charges. The claim referencing the EEOC charges alone went forward but was disposed of on summary judgment when the District Court determined that "the record is virtually devoid of evidence tying Council members' treatment of him *to his EEOC charges*."

While the District Court found an insufficient connection between Mr. Kelly's EEOC charges and his constructive discharge, Mr. Kelly specifically averred that upon receipt of the January Letter requesting adherence to the code of conduct and particular changes in the Council members' behavior, Council members "in fact escalated [their] defiant behavior regarding each of the requested accommodations in an open and flamboyant manner to state to Mr. Kelly that they, as elected officials, were not subject to the requirements of ordinary business employers. In short, they thumbed their nose at Mr. Kelly's request, regardless of his health or welfare." (J.A. 251, Am. Compl. ¶ 46).

When an employer ignores a request for accommodation, and even more so, when an employer steps up its activity in direct contravention of the accommodation request, the employee can state a claim for retaliation under the ADA. *See Ryder v. Beaumont Health, Inc.*, No. 18-10760, 2019 U.S. Dist. LEXIS 175214, at *32 (E.D. Mich. Oct. 9, 2019) ("a reasonable jury could find that Beaumont ignored Ryder's requests based, in part, on discriminatory animus"); *Edwards v. Ill. Dep't of Fin. & Prof'l Regulation*, 210 F. Supp. 3d 931, 949 (N.D. Ill. 2016) ("a jury could infer retaliation from Defendant's inaction" on employee's accommodation request). Thus, had the District Court not discounted the January Letter, Mr. Kelly would have been able to

show the necessary discriminatory inference based upon the Town's decision to ignore Mr. Kelly's accommodation request.

### E. ADA Interference

In order to state a claim for ADA interference, a plaintiff must show: (1) he engaged in activity statutorily protected by the ADA; (2) he was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendant coerced, threatened, intimidated, or interfered on account of his protected activity; and (4) the defendants were motivated by an intent to discriminate. *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550-51 (7th Cir. 2017). Interference claims should be "broadly applied to reach all practices which have the effect of interfering with the exercise of rights [under federal anti-discrimination law]." *Brown v. City of Tucson*, 336 F.3d 1181, 1191 (9th Cir. 2003) (applying Fair Housing Act) (*citing United States v. City of Hayward*, 36 F.3d 832, 835 (9th Cir. 1994)) (internal citations omitted*)*. "[C]ertain types of actions [which may not] rise to the level of unlawful retaliation, are nevertheless actionable as interference." *EEOC Enforcement Guidance on Retaliation and Related Issues*, Sec. III ADA Interference Provision, Number 915.004, n. 177, Aug. 25, 2016, *available at* https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues.

By Order of 2/3/20, the District Court dismissed Mr. Kelly's interference claim, finding that "the Complaint contain[ed] no factual allegations showing that the Town coerced, threatened, intimidated, or interfered on account of Kelly's protected activity," requesting the accommodation of "short breaks." J.A. 147, Order 2/3/20, p. 19. The Court found Mr. Kelly's allegation that he was threatened with termination to be "in no way tied to his request for accommodations, either temporally or in any other sense." J.A. 147, Order 2/3/20, p. 19. Revisiting the interference claim in its Order of 5/20/20, the District Court reiterated that "the First Amended Complaint gives no indication that the threats [to Kelly's employment] were designed to coerce Kelly into forgoing reasonable accommodations or to prevent him from filing charges of discrimination." J.A. 232, Order 5/20/20, p. 17.

Once again, however, the District Court's premature disposal of the January Letter also handicapped his interference claim. When read in light of Mr. Kelly's request for civility and compliance with Town policies and procedures, Mr. Kelly sufficiently alleged the Town Council's attempts to keep him from pursuing reasonable accommodations and/or filing complaints under the ADA. Mr. Kelly made his first formal request for accommodations with the January Letter. (J.A. 267, Am. Compl. ¶ 114). The

Town ignored Mr. Kelly's request. (J.A. 250-251, Am. Compl. ¶¶ 45-46). After sending the request, threats of termination, etc. increased in direct contravention of his request, which continued to be ignored. (J.A. 250-251, Am. Compl. ¶¶ 45-46). Without the Town's support or specific permission, Mr. Kelly took matters into his own hands as far as he dared, parking far away from the Town Hall and walking to the office, for example, in order to salvage his health. (J.A. 251-252, Am. Compl. ¶ 47). When Mr. Kelly took these small steps, he was ridiculed by the same people who threatened to fire him, publicly humiliated him and privately addressed him with profane and abusive language. (J.A. 254, Am. Compl. ¶ 53). As a result, Mr. Kelly believed that "he would receive unwarranted discipline for pursuing further accommodations or "unilaterally implementing his requested reasonable accommodations." (J.A. 267, Am. Compl. ¶ 116). "[A] threat does not have to be carried out in order to violate the interference provision, and an individual does not actually have to be deterred from exercising or enjoying ADA rights in order for the interference to be actionable." *EEOC Enforcement Guidance on Retaliation and Related Issues*, Sec. III, Ex. 25, Number 915.004, *supra*. The fact that Mr. Kelly continued to pursue the interactive process, and to work for the Town for four more months before his constructive discharge is a testament to his perseverance and his

affection for his Town; it does not support a finding that the Town did not attempt to interfere with Mr. Kelly's pursuit of reasonable accommodations.

## VII.   CONCLUSION

The District Court's ruling that the January Letter was not a request for reasonable accommodation should be reversed. The assessment of the reasonableness of an accommodation request is a factual question, not suitably addressed on a Motion to Dismiss. Additionally, the District Court's Orders of 2/3/20 and 5/20/20, dismissing in whole or in part, Mr. Kelly's claims of discrimination, interference, retaliation, and failure to accommodate, should also be reversed.

## VIII.  REQUEST FOR ORAL ARGUMENT

On behalf of the Appellant, we hereby request oral argument.

Respectfully submitted,

*/s/* Thomas E. Strelka
Thomas E. Strelka, Esq. (VSB #75488)
L. Leigh R. Strelka, Esq. (VSB #73355)
Monica L. Mroz, Esq. (VSB #65766)
STRELKA EMPLOYMENT LAW
Warehouse Row
119 Norfolk Avenue, S.W.,
Suite 330
Roanoke, VA 24011
Tel: 540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
monica@strelkalaw.com

**CERTIFICATE OF COMPLIANCE**

1.     This Opening Brief of Appellant has been prepared in a proportionally spaced typeface using Microsoft Word, Georgia, 14 point.

2.     Exclusive of the table of contents; table of citations; certificate of compliance and the certificate of service, this Opening Brief of Appellant contains 8,199 words.

3.     I understand that a material misrepresentation can result in the court's striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief and a copy of the word or line printout.

/s/ Thomas E. Strelka
Thomas E. Strelka, Esq.