NO. 21-2261

-----------------------------------------------------------------------------------------

## United States Court of Appeals
## FOR THE FOURTH CIRCUIT

GREGORY WARREN KELLY,

*Plaintiff – Appellant,*

v.

TOWN OF ABINGDON, VIRGINIA,

*Defendant – Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA AT ABINGDON
───────────────────────────────

**BRIEF OF APPELLEE TOWN OF ABINGDON, VIRGINIA**
───────────────────────────────

Ramesh Murthy
(VSB No. 31801)
Cameron S. Bell
(VSB No. 47685)
PENN, STUART & ESKRIDGE
208 East Main Street
Abingdon, VA 24212
Telephone: 276/628-5151
Facsimile: 276/628-5621
cbell@pennstuart.com

*Counsel for Appellee Town of Abingdon, Virginia*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _21-2261_      Caption: _Gregory Warren Kelly v. Town of Abingdon, Virginia_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Town of Abingdon, Virginia_
(name of party/amicus)

_____

 who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/Cameron S. Bell                    Date:        11/10/21

Counsel for: Town of Abingdon, Virginia

Print to PDF for Filing

# TABLE OF CONTENTS

DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ......................................................... ii

COUNTERSTATEMENT OF THE ISSUES ................................. 1

COUNTERSTATEMENT OF THE CASE .................................... 1

SUMMARY OF ARGUMENT ...................................................... 4

ARGUMENT ............................................................................... 5

     A.    STANDARD OF REVIEW ...................................... 5

     B.    THE DISTRICT COURT CORRECTLY RULED
          THAT A LETTER FROM COUNSEL DID NOT
          CONTAIN REQUESTS FOR ACCOMMODATION ............. 6

     C.    THE DISTRICT COURT CORRECTLY GRANTED THE
          MOTION TO DISMISS CLAIMS FOR DISABILITY
          DISCRIMINATION ................................................ 12

     D.    THE DISTRICT COURT CORRECTLY GRANTED THE
          MOTION TO DISMISS CLAIMS FOR INTERFERENCE ... 14

     E.    THE DISTRICT COURT CORRECTLY DENIED THE
          MOTION TO AMEND FOR CLAIMS FOR
          DISABILITY DISCRIMINATION AND
          INTERFERENCE. ................................................. 16

CONCLUSION .......................................................................... 18

STATEMENT REGARDING ORAL ARGUMENT .................................. 18

SIGNATURE OF COUNSEL ....................................................... 19

# TABLE OF AUTHORITIES

CASES:

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................. 5, 13

*Berkenfeld v. Lenet*,
921 F.3d 148 (4th Cir. 2019) ......................................................... 6

*Brown v. City of Tucson*,
336 F.3d 1181 (9th Cir. 2003) ..................................................... 15

*Buscemi v. Bell*,
964 F.3d 252 (4th Cir. 2020) ......................................................... 5

*Equal Rts. Ctr. v. Niles Bolton Assocs.*,
602 F.3d 597 (4th Cir. 2010) ......................................................... 6

*Foman v. Davis*,
371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)......................... 6

*Frakes v. Peoria Sch. Dist. No. 150*,
872 F.3d 545 (7th Cir. 2017) ....................................................... 15

*Glaser v. Enzo Biochem, Inc.*,
464 F.3d 474 (4th Cir. 2006) ......................................................... 6

*Haulbrook v. Michelin N. Am.*,
252 F.3d 696 (4th Cir. 2001) ................................................. 13, 17

*Howard v. American Institute of Certified Public Accountants*,
No 1:08-CV-483, 2009 WL 1173017 (W.D.Va. Apr. 27, 2009)................. 16

*Khan v. Jenkins*,
814 F.2d 655 (4th Cir. 1987) ....................................................... 16

*Laber v. Harvey*,
438 F.3d 404 (4th Cir. 2006) ........................................................... 6

*Schatz v. Rosenberg*,
943 F.2d 485 (4th Cir. 1991), *cert. denied*, 503 U.S. 936 (1992) ................. 5

*Walter v. United Airlines, Inc.*,
No. 99-2622, 2000 WL 1587489 (4th Cir. Oct. 25, 2000) ............................ 8

*Wilson v. Dollar Gen. Corp.*,
717 F.3d 337, 345 (4th Cir. 2013) .................................................. 7

STATUTES:

42 U.S.C. § 2000e-5(f)(1). ........................................................... 16

42 U.S.C. § 12111(9) .................................................................. 10

42 U.S.C. § 12203(b) ................................................................. 14

RULES:

EEOC ENFORCEMENT GUIDANCE ON RETALIATION
AND RELATED ISSUES, 2016 WL 4688886, at *26 ................................ 15

# COUNTERSTATEMENT OF THE ISSUES

1. WHETHER THE DISTRICT COURT CORRECTLY RULED THAT A LETTER FROM COUNSEL DID NOT CONTAIN REQUESTS FOR ACCOMMODATION?

2. WHETHER THE DISTRICT COURT CORRECTLY RULED THAT KELLY HAD FAILED TO STATE A CLAIM FOR DISABILITY DISCRIMINATION AND ADA INTERFERENCE?

3. WHETHER THE DISTRICT COURT CORRECTLY DENIED KELLY'S PROPOSED AMENDED COMPLAINT FOR DISCRIMINATION AND ADA INTERFERENCE?

# COUNTERSTATEMENT OF THE CASE

Kelly, a lawyer himself, was town attorney and later town manager of the Town of Abingdon, Virginia. After hiring his own lawyer, Kelly filed three EEOC charges against the Town. Kelly's issues with various members of the elected Town Council centered on a controversial project called The Meadows to build a sports complex. Kelly's claims were not related to any claimed disability or protected activity.

According to the initial Complaint, in March 2005 the Town hired Kelly as Town Attorney, and the Town later appointed him Town Manager. (Joint Appendix, p. 13)

On September 13, 2017, Kelly filed a Charge of Discrimination with the EEOC. (Joint Appendix, p. 14)

Kelly alleged that he filed a second Charge of Discrimination with the EEOC on December 27, 201[7]. (Joint Appendix, p. 14-15)

On January 10, 2018, Kelly's attorney sent a letter to the Town. (Joint Appendix, p. 15, 35-38) The letter, which was written on behalf of Kelly as well as Deborah Icenhour, who was the Town Attorney, and Cecille Rosenbaum, the Town clerk, contained several admonitions to Town Council, but did not contain requests for accommodation or how any of the requested actions were related to Kelly at all, much less his alleged disabilities. The letter stated:

- That all Members of the Town Council and Town Management have a fundamental understanding of the Town Charter;
- That the Town Council and Town Management have a fundamental understanding of the Code of Ethics and that all parties continually work toward operating in total compliance with the Code of Ethics on a day-to-day basis;
- That the Town Council acknowledge that it is inappropriate for the members of the Town Council to give directives to subordinate employees of Town Management;
- That members of Town Council cease threatening the termination of a Town employee's job on a weekly, sometimes daily, basis;
- That the Town Council give greater consideration to diversity in hiring Town personnel with an emphasis on the hiring of women in management positions;
- That the Town Council recognize it is the role of the Mayor to act as liaison between Town Council and Town Management;
- That members of Town Council begin working together with Town Management to establish trust between the parties;
- That every member of Town Council utilize courtesy and care in all communications with Town Management;
- That all Town staff be treated equally in the eyes of the members of Town Council;

- That the Town Council be mindful of the bounds of individual employees' roles within the Town structure, or alternatively, that written policies or job descriptions clarify roles, duties, and responsibilities;
- That Town Council acknowledge that this is a team and within the best interest of the Town for Town Council to support and defend Town Management; and
- That Town Council, working with Town Management, work in conjunction to draft written standing policies to provide guidance to all individuals.

The district court correctly ruled that this letter contained no requests for reasonable accommodation. (Joint Appendix, p. 35-38)

On May 7, 2018, Kelly resigned his employment. (Joint Appendix, p. 13) Kelly claimed that certain members of Town Council mistreated him, but he did not allege any facts that tied that alleged treatment to his disabilities or protected activity. (Joint Appendix, p. 14)

On July 27, 2018, Kelly filed his third Charge of Discrimination with the EEOC. (Joint Appendix, p. 13) He received a Dismissal and Notice of Rights from the EEOC dated May 22, 2019. (Joint Appendix, p. 13, 29-32)

In the initial Complaint, Kelly only made conclusory allegations towards his attempted claims, consisting of Count I for discrimination in violation of the Americans with Disabilities Act ("ADA"), Count II for retaliation in violation of the ADA, Count III for failure to accommodate in violation of the ADA, and Count IV for interference in violation of the ADA.

The district court granted the Town's motion to dismiss all counts except Count V for breach of contract, but allowed Kelly to file a proposed amended complaint.

In his proposed amended complaint, similar to the initial complaint, Kelly failed to allege facts that would support his claims for disability discrimination and interference. Nevertheless, the district court allowed Kelly's claims for retaliation and failure to accommodate to move forward along with his breach of contract claim.

Following extensive discovery, the district court granted the Town's motion for summary judgment upon the remaining ADA claims. A jury granted a defense verdict upon Kelly's breach of contract claim. Kelly did not appeal the summary judgment ruling nor the jury verdict.

## SUMMARY OF ARGUMENT

The district court correctly dismissed Counts I-V of the initial complaint because Kelly failed to allege sufficient facts to state a claim. The district court also correctly ruled that the letter from a lawyer representing Kelly and other Town employees did not contain any requests for accommodation for Kelly's alleged disabilities. Regardless, Kelly's appeal of those issues is moot because the district court provided Kelly with the opportunity to amend and allowed claims of retaliation and failure to accommodate to proceed to summary judgment. Kelly did not appeal

the summary judgment dismissal of those claims, so they are not properly raised here.

The district court did not abuse its discretion and correctly denied Kelly's proposed amended complaint as to disability discrimination and interference because Kelly failed to allege facts that he was discriminated against because of his alleged disabilities and failed to allege that the Town took any action to interfere with Kelly exercising his rights.

**ARGUMENT**

A.    STANDARD OF REVIEW

In determining whether a complaint has sufficiently stated a claim against a defendant, this Court reviews the record de novo and construes all facts in light more favorable to the plaintiff.  *Buscemi v. Bell*, 964 F.3d 252, 262 (4th Cir. 2020). However, this Court does not have to accept legal conclusions or a "'formulaic recitation of the elements of a cause of action.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Were it otherwise, Rule 12(b)(6) would serve no function, for its purpose is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint." *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991), *cert. denied*, 503 U.S. 936 (1992) (internal quotation marks and citations omitted).

The Fourth Circuit reviews a district court's denial of a motion to amend a complaint under the deferential abuse of discretion standard. *See Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 476 (4th Cir. 2006). A district court has discretion to deny a motion to amend a complaint, so long as it does not outright refuse "to grant the leave without any justifying reason." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile. *See Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc).

Furthermore, it is well established that this Court "may affirm the dismissal by the district court on the basis of any ground supported by the record[,] even if it is not the basis relied upon by the district court". *Berkenfeld v. Lenet*, 921 F.3d 148, 158 (4th Cir. 2019) (internal citations omitted).

B.    THE DISTRICT COURT CORRECTLY RULED THAT A LETTER FROM COUNSEL DID NOT CONTAIN REQUESTS FOR ACCOMMODATION.

Kelly's argument on appeal ignores the underlying basis for the district court's ruling on motion to dismiss and the motion to amend. In addition, Kelly ignores the fact that the Court allowed Kelly's failure to accommodate claim to proceed through

discovery when it was then dismissed on summary judgment, a ruling which Kelly did not appeal.

In the Court's ruling to dismiss the initial Complaint, Kelly failed to allege facts that would support the elements of a failure to accommodate claim.

To state a claim for failure to accommodate, a plaintiff must plausibly allege "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (internal quotation marks, alterations, and citations omitted).

The district court ruled:

> Kelly's failure to accommodate claim must be dismissed because he has not alleged facts showing that he could perform the essential functions of his job with reasonable accommodations. As noted above, he does not even allege what the essential functions of his job were, nor does he state if or how his disabilities impacted him in the workplace. While he references a request to take short breaks, he does not explain why short breaks were necessitated by his disabilities or how they would have helped him to perform the essential functions of his job. *See id.* (explaining that reasonableness of the request is only one part of the inquiry, and the plaintiff "must also show that with this accommodation he was a qualified individual — that is, he could have performed the essential functions of his position").

(Joint Appendix, p. 144-145)

As a result, the district court dismissed this claim of the original complaint because Kelly had not alleged that he was a qualified individual. Kelly does not assign error to this ruling, so his appeal on this alternative issue is of no moment.

Also, Kelly's position in the original complaint was that the Town failed to accommodate him "simply because it did not engage in an interactive process with him." (Joint Appendix, p. 145)

In the initial complaint, Kelly only alleged in a conclusory fashion that the Town's supposed failure to engage in the interactive process resulted in the failure to identify an appropriate accommodation. In fact, Kelly alleged only that:

- "The Town refused to engage in the interactive process in any meaningful way to find accommodations for Mr. Kelly's disabilities. The Town's refusal to engage in the interactive process resulted in the failure to identify an appropriate accommodation." (Joint Appendix, p. 250)

- "Mr. Kelly only received token communication from the Town's legal counsel…stating that the Town would engage in the interactive process…" (Joint Appendix, p. 250)

The district court rejected this argument as well based on clear Fourth Circuit precedent.

"[A]n employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process." *Walter v. United Airlines, Inc.*, No. 99-2622, 2000 WL 1587489, at *4 (4th Cir. Oct. 25, 2000) (unpublished). Instead, the plaintiff is required to show that "the employer's failure to engage in the interactive process resulted in the failure to identify an appropriate accommodation for the disabled employee." *Id.*

(Joint Appendix, p. 145-146)

As a result, Kelly's failure to accommodate claim failed to the extent it was based solely on the argument that the Town did not engage in the interactive process. Consequently, Kelly's claim failed for this alternative basis as well.

Finally, the district court correctly ruled that a letter from the lawyer who represented Kelly and two other Town employees containing a list of workplace grievances did not amount to a request for reasonable accommodations under the law.

Kelly misplaces his focus on whether the ruling was upon the reasonableness of supposed accommodations, instead of acknowledging that the actual district court's holding was that the letter did not contain a request for accommodations at all. The court need not reach whether various requests were "reasonable" in the context of ADA when the letter did not meet the in initial requirement that it contain accommodations.

The ADA clearly provides that "reasonable accommodations" include: (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and

other similar accommodations for individuals with disabilities. 42 U.S.C. § 12111(9).

The district court correctly ruled that the January 10, 2018, letter sent on behalf of Kelly, as well as the Town Attorney, Deborah Icenhour, and the Town Clerk, Cecille Rosenbaum, did not contain accommodations for Kelly's alleged disabilities. (Joint Appendix, p. 146). The letter was not specific to Kelly, his disabilities and did not contain any proposals that would accommodate those disabilities or his essential job functions. Instead, this letter encouraged the Town Council to "have a fundamental understanding" of various Town rules, to be courteous and other items that did not mention any specific person, much less Kelly, and many of the items clearly do not refer to Kelly, a white male (not a woman), Town Manager (not a subordinate employee), at all. These items are not accommodation requests and did not contain any information upon which the Town would know what would allow Kelly to perform the essential functions of his job. As a result, the district court properly ruled that Kelly had failed to state a claim and did not need to defer analysis on whether these items were reasonable or not.

In any event, the Court allowed Kelly to amend the failure to accommodate claim and to move forward through discovery on that claim.

> I previously held that the January 10, 2018, letter from Kelly's counsel to the Town could not support his failure to accommodate claim. *Kelly*, 2020 WL 525296, at *7. I adhere to that ruling, but I find that Kelly has now alleged enough facts that, if true, would support a failure to

accommodate claim based on his request for short breaks and reduced stress. He has now "explain[ed] why short breaks were necessitated by his disabilities" and "how they would have helped him to perform the essential functions of his job." *Id.* These new allegations are enough to survive a motion to dismiss as to the failure to accommodate claim. Kelly has pleaded facts that would satisfy all four of the elements set forth above. I therefore will grant the motion to amend as to Count III.

(Joint Appendix, p. 231)

Notably, the district court held that Kelly's allegations in the Amended Complaint that he had requested "reduced stress" would be considered. Thus, Kelly's argument on appeal that the district court did not allow this claim to move forward is simply untrue. The district court correctly ruled that Kelly's lawyer's January 10, 2018, letter did not, however, contain any accommodation to reduce stress because of Kelly's disabilities or how those requests would allow him to perform the essential functions of his position.

Moreover, ultimately this claim was dismissed on summary judgment because the evidence showed that Kelly did in fact take short breaks and walks and therefore there was no question of material fact. Kelly has not appealed that ruling and therefore it is not properly raised here. (Joint Appendix, p. 148)

This Court analyzes the district court's ruling on a motion to amend for abuse of discretion. First, the district court allowed Kelly to file the Amended Complaint and proceed on that claim. Kelly was allowed to move forward on scant allegations in his Amended Complaint and attempted to come forward with evidence that the

Town failed to accommodate him, which claim ultimately failed. As a result, there is no issue to appeal.

In any event, the district court correctly ruled that the letter did not constitute a request for reasonable accommodations for the same reasons stated in the court's opinion on the motion to dismiss. But regardless, the district court explained its rationale and did not abuse its discretion in its ruling on the motion to amend.

## C.     THE DISTRICT COURT CORRECTLY GRANTED THE MOTION TO DISMISS CLAIMS FOR DISABILITY DISCRIMINATION.

The district court correctly granted the motion to dismiss Kelly's disability discrimination claim. Similar to Kelly's arguments regarding other counts, Kelly ignores that the district court held that Kelly had failed to allege facts to support several elements of this claim.

First, Kelly failed to allege sufficient facts to show that he was constructively discharged. Kelly's allegations were vague and conclusory. On appeal, Kelly does not point to any factual allegations that change this conclusion. Instead, Kelly relies on cases from other circuits that he purports allow this type of conclusory pleading.

In an ADA wrongful discharge case, a plaintiff establishes a prima facie case if he demonstrates that (1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under

circumstances that raise a reasonable inference of unlawful discrimination. *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001).

The district court ruled:

Kelly's allegations supporting his constructive discharge theory are vague at best. He alleges that he was continuously threatened with termination and was "subjected to insults, invasions of privacy, disclosure of confidential information, and profane and obscene messages from Town leadership and has been publicly ridiculed and defamed on several occasions." Compl. ¶ 15, ECF No. 1. He cites no specific instances in support of these conclusory allegations, nor does he allege who subjected him to these hardships. He contends that the Town refused to engage in an interactive process with him to determine appropriate accommodations for his disabilities. Finally, he asserts that the Town discriminated or retaliated against him either for filing EEOC charges or because of his disabilities and accommodations requests, or both. To survive a motion to dismiss, Kelly's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Bell Atl. Corp.*, 550 U.S. at 555, 570. The sparse, imprecise allegations set forth in the Complaint do not satisfy that test. Kelly has not plausibly alleged that he was constructively discharged. As this is a required element of his disability discrimination claim under the ADA, I will dismiss Count I for failure to state a claim upon which relief can be granted.

(Joint Appendix, p. 141-142)

Regardless, the district court did not base its ruling on the constructive discharge element alone. Instead, the court also found that Kelly had failed to show that he was a qualified individual because he did not allege facts that his job performance met his employer's legitimate expectations nor that he could perform the requirements of his job with or without reasonable accommodations. (Joint Appendix, p. 142)

Kelly's argument disregards these holdings and focuses only on causation, which he admits in his brief that he has not alleged directly. As a result, this argument fails.

The district court further explained that Kelly had merely speculated that he was discriminated against because of any disability. "He must allege some facts tending to show that the mistreatment he claims to have suffered was causally related to his disabilities. Because he has not done so, his claim of disability discrimination must be dismissed." (Joint Appendix, p. 142-143). Kelly's arguments that he quit several months after he made the Town aware of his alleged disabilities does not change this result. The district court did not err in its decision.

### D. THE DISTRICT COURT CORRECTLY GRANTED THE MOTION TO DISMISS CLAIMS FOR INTERFERENCE.

Likewise, Kelly failed to state a claim for interference. Under the ADA interference provision, it is unlawful to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA]. 42 U.S.C. § 12203(b). The Fourth Circuit has not yet addressed ADA interference. But in the Seventh and Ninth Circuit, which have addressed anti-interference, a plaintiff alleging an ADA interference claim must demonstrate that: (1) he engaged in activity statutorily protected by the ADA; (2) he was engaged in,

or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of his protected activity; and (4) the defendants were motivated by an intent to discriminate. *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550–51 (7th Cir. 2017); *Brown v. City of Tucson*, 336 F.3d 1181 (9th Cir. 2003).

The EEOC has also provided meaningful guidance on the issue, stating that "interference is broader than the anti-retaliation provision, protecting any individual who is subject to coercion, threats, intimidation, or interference with respect to ADA rights." EEOC ENFORCEMENT GUIDANCE ON RETALIATION AND RELATED ISSUES, 2016 WL 4688886, at *26. The statute, regulations, and court decisions have not separately defined the terms "coerce, intimidate, threaten, and interfere" but the EEOC Guidance suggests that "as a group, these terms have been interpreted to include at least certain types of actions which, whether or not they rise to the level of unlawful retaliation, are nevertheless actionable as interference." *Id.* And in fact, "In the Commission's view, it only prohibits conduct that is reasonably likely to interfere with the exercise or enjoyment of ADA rights." *Id.*

The district court held that Kelly had failed to allege sufficient facts to support this claim because he had not alleged what protected activity he undertook and moreover that he failed to allege any facts that the Town coerced, threatened, intimidated, or interfered on account of Kelly's protected activity. Kelly actually

alleged that he did not ask for short breaks because "he feared that he would receive written discipline or be terminated for a pretextual reason." This speculative allegation did not contain any facts that the Town took any action to interfere with Kelly's rights. It also ignores that Kelly did in fact file two EEOC charges, while employed and another afterwards.[1]

The district court was correct in its ruling, regardless, this issue is moot because the district court allowed Kelly to propose an amendment to this claim.

E. THE DISTRICT COURT CORRECTLY DENIED THE MOTION TO AMEND FOR CLAIMS FOR DISABILITY DISCRIMINATION AND INTERFERENCE.

Despite being given another opportunity to attempt to state a claim for discrimination and interference, Kelly failed to allege sufficient facts to support these claims.

---

[1] Alternatively, all of Kelly's Title VII claims are time barred. A civil action under Title VII must be commenced within ninety days of when the EEOC issues a right to sue notice. 42 U.S.C. § 2000e-5(f)(1). A plaintiff is barred from asserting claims in a latter EEOC Charge that are based upon discrete acts asserted in a previous EEOC Charge on which the plaintiff had not filed suit within the requisite 90 days, absent a continuing violation. *See Khan v. Jenkins*, 814 F.2d 655 (4th Cir. 1987) (unpub); *Howard v. American Institute of Certified Public Accountants*, No 1:08-CV-483, 2009 WL 1173017 (W.D.Va. Apr. 27, 2009). On September 13, 2017, Kelly filed a Charge of Discrimination with the EEOC. (Joint Appendix, p. 14-15) Kelly received his right to sue letter on December 12, 2017. The first Charge of Discrimination included claims for disability discrimination and retaliation. Kelly had ninety days from December 12, 2017 to file suit based upon these claims. Kelly had claimed that he was discriminated against at that time. Kelly was therefore required to move forward with suit based upon those claims. Because he failed to do so, his ADA claims are now barred.

As to the discrimination claim Kelly made allegations in his proposed amended complaint that certain individual members of Council (not Council as a whole) took actions related to various underlying reasons. None of the allegations, however, was related to Kelly's alleged disabilities.

> alleged actions and statements by Humphreys and Lowe are regrettable if true, the First Amended Complaint suggests that they were driven by political and personal motivations unrelated to Kelly's disabilities. These alleged motivations include opposition to the Meadows development, a desire to be reelected, personal concerns about noise from train whistles, and an interest in having personal friends appointed to positions within the Town. The First Amended Complaint alleges that improper and unsavory behaviors were directed at other Town officials and employees who are not alleged to have suffered from disabilities. The new allegations simply do not give rise to an inference that the Town treated Kelly less favorably than others due to his disabilities.

(Joint Appendix, p. 228-229)

In an ADA wrongful discharge case, a plaintiff establishes a prima facie case if he demonstrates that (1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001).

Kelly's proposed complaint contained no allegations that would raise a reasonable inference that he was discriminated against because of his disabilities.

As a result, the district court properly denied the motion to amend. The court explained its rationale and did not abuse its discretion in this decision.

Similarly, Kelly failed to allege additional facts for his interference claim to move forward. The district court explained that Kelly made "no suggestion that the Town attempted to dissuade Kelly from seeking accommodations or filing EEOC charges." (Joint Appendix, p. 232). Also, Kelly failed to allege any threats that "were designed to coerce Kelly into foregoing reasonable accommodations or to prevent him from filing charges of discrimination."

The court made the distinction between a claim for interference, which Kelly had not properly alleged and the claims of retaliation and failure to accommodate that the court did allow to go forward. Again, the district court explained its rationale and did not abuse its discretion.

## CONCLUSION

The district court correctly ruled upon the Town's motion to dismiss and did not abuse its discretion in its ruling on the plaintiff's motion to amend. Therefore, this Court should dismiss the appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee Town of Abingdon does not request oral argument. The facts and legal arguments are adequately presented in the briefs and the record, and

the relevant law is clear and straightforward; however, should the Court determine

that oral argument would aid the Court in its decisional process, counsel will appear.

TOWN OF ABINGDON

Appellee

By Counsel

Ramesh Murthy
  VSB No. 31801
Cameron S. Bell
  VSB No. 47685
PENN, STUART & ESKRIDGE
P.O. Box 2288
Abingdon, Virginia  24212
Telephone:  276/628-5151
Facsimile:  276/628-5621
cbell@pennstuart.com

By  */s/ Cameron S. Bell*
      Cameron S. Bell
      Counsel for Town of Abingdon


Dated:  March 15, 2022